279 So.2d 428

Thomas Lee SHANNON

v.

Peggy Joy HOLLINGSWORTH.

SC 11.

Supreme Court of Alabama.

June 7, 1973.

Hogan & Smith, Birmingham, for appellant.

Dunn, Porterfield, McDowell & Scholl, Birmingham, for appellee.

HEFLIN, Chief Justice.

This is an appeal from the Circuit Court of Jefferson County, Alabama, wherein a complaint was filed by Thomas Lee Shannon, who had been injured in an automobile collision, against Peggy Joy Hollingsworth and Daniel Albert Jones. An amended complaint was later filed, striking Daniel Albert Jones as a party defendant.

The appellant-plaintiff, Thomas Lee Shannon, was a passenger in, but not the owner of, an automobile being driven by Daniel Albert Jones, and they were on the way to a dance at Oporto Armory at the time of the accident. They had gone by the home of Roger McAllister, a friend of appellant-plaintiff, at the latter's request and the driver, Daniel Albert Jones, was following the directions of appellant-plaintiff Shannon as to how to get to McAllister's home. They left to go to Oporto Armory. Because Daniel Albert Jones was not familiar with the area, he continued to follow the directions of the appellant-plaintiff Shannon.

In a residential section of the City of Birmingham, at the intersection of 5th Avenue North and 79th Street, North, which contains no traffic control device whatsoever, the automobile in which the appellant-plaintiff was riding collided with an automobile driven by the appellee-defendant, Peggy Joy Hollingsworth. Miss Hollingsworth (who had married George William Knotts between the date of the accident and the date of the trial and was known as Mrs. Knotts at the trial) who was traveling east on 5th Avenue, testified she was aware of headlights of the Jones automobile 75 to 100 feet from the intersection. However, she stated, "The next time I noticed that Jones auto was when it was just right in my face"; that she did not apply the brakes or have time to apply her brakes before the accident occurred. Jones was traveling south on 79th Street and skidmarks evidenced the application of his brakes. The jury found for the defendant Hollingsworth and the lower court ordered that the appellant-plaintiff Shannon was not entitled to a recovery. It is from this judgment that appeal was taken.

The appellant's-plaintiff's first contention is presented by his assignments of error numbers 1, 3, 5 and 6, whereby he argues that the lower court erred in charging the jury as follows:

"Now, I told you that there was still a third contention made by the Defendant set up in this Plea in Short by Consent, and that is that she says that the driver of the automobile in which the Plaintiff was riding was guilty of contributory negligence which proximately contributed to the collision and to the injuries that the Plaintiff received; and that further, at the time the Plaintiff, himself, either was directing the driver of that vehicle, Mr. Jones, in the manner in which he operated the automobile, or that he had the right under the relationship that existed to direct the control of the automobile and the manner in which Mr. Jones drove that automobile, if, under that plea you find that Mr. Jones was guilty of negligence which directly contributed to the accident, and if at the time Mr. Shannon was either directing the manner in which Mr. Jones drove that automobile or had the right under the relationship that existed between the two of them to control the manner in which he drove it, then that negligence would be imputed to the Plaintiff and the Plaintiff would not be entitled to recover."

██ Appellant-plaintiff Shannon argues that the submission to the jury of the issue of appellant's-plaintiff's control or right to control the operation of the automobile was error in that there was no evidence from which a jury could find that the appellant-plaintiff had exercised or had a right to exercise such control. It is not disputed that "in order to create the imputation of negligence of the driver to the passenger, the passenger must have assumed control and direction of the vehicle

or must have some right to a voice in the control, management or direction of the vehicle". Johnson v. Battles, 255 Ala. 624, 52 So.2d 702 (1951). The issue thus presented is whether there was any evidence from which the jury could have concluded that the appellant-plaintiff Shannon had exercised or had a right to exercise such control. There was no evidence from which it could be inferred that Shannon had the right to exercise such control from ownership or otherwise. The testimony of Daniel Albert Jones relative to the exercise of control and direction by Shannon was as follows:

"Q   And then you started back en route to the armory?

"A   Yes, sir.

"Q   All right. And do you know which way you all came into—well, let's say Roebuck?

"A   Came into Roebuck on Center Point Highway.

"Q   On Center Point Highway. Now, when did you first get on to 5th Avenue North where the accident happened?

"A   At the time of the accident.

"Q   Well, you had to cross somewhere to get over 5th Avenue North after you got on to 1st Avenue, didn't you?

"A   Yes, sir, but *Lee was directing me* and I couldn't—

"Q   You don't know how long you had been on there?

"A   No, sir.

"Q   But you did turn up 79th Street and go up and it was a dead end up there?

"A   I believe we crossed 79th Street into a dead end and had to turn around and go back down 79th Street.

"Q   Well, I'll ask you whether or not it's not a fact that 79th Street dead ends two blocks north of 5th Avenue North?

"A   I'm not positive. I know—know we ran into a dead end and had to turn around and go back.

"Q   Had to turn around and the street that you ran into that was a dead end was the one that you turned around and was traveling at the time of the accident; is that true?

"A   I'm not positive.

"Q   Well, just tell us because it may be important to the jury. When you turned around, we were talking about a matter of a couple of blocks. This is 5th Avenue. You had a dead end somewhere up in here; is that correct?

"A   Yes, sir.

"Q   All right. Well, after you turned around at the dead end, did you continue in a straight direction south until the accident happened, or did you make a right turn and in some other manner get back on 79th Street?

"A   We continued in a straight direction.

"Q   All right, sir. So then, your testimony is that you turned around some place up here at the dead end and was headed back south on 79th Street at the time of the accident?

"A   Yes, sir.

"Q   And that you never got on any other street from the time that you turned around until the accident occurred?

"A   No, sir.

"Q   Now, *was Lee directing you all this time, telling you where to go and so forth* and so on?

"A   *Yes sir.*

"Q   In other words, *he was exercising some control over the vehicle as to where you were going and so forth; is that correct*?

"A   *Yes, sir.*

"Q·  Yes, sir. Now, let me ask you this. From Lee's standpoint, as I understand the testimony earlier, and you weren't here, but *he had a friend* that lived over in that area some place, did he not?

"A Yes, sir.

"Q And he asked you to go over there, did he not?

"A Yes, sir.

"Q Did you know who he was going to see?

"A No, sir.

"Q Had you ever seen him before, or her before?

"A No, sir.

"Q Do you know their name now?

"A No, sir.

"Q *And you had no idea where they lived?*

"A No, sir.

"Q *And Lee was directing you from the time you got on 1st Avenue North how to get over there?*

"A Yes, sir.

"Q And *was directing you how to get to Oporto Armory* from there?

"A Yes, sir."

"Q (BY MR. SMITH) Now, Mr. Jones, I believe you testified on cross that you all were going over to see a friend of Lee's; is that correct?

"A Yes, sir.

"Q And I believe you said that he was telling you where the boy lived and how to go over there; is that correct?

"A Yes, sir.

"Q *I'll ask you whether or not he was telling you how to drive the car?*

"A *No, sir.*"

(Emphasis supplied)

The testimony of the appellant-plaintiff also shed light on the issue whether the appellant-plaintiff exercised any control over the operation of the Jones vehicle:

"Q *You were telling him where to go, were you not?*

"A I told him what streets to turn on, yes, sir.

"Q And you told—you directed—*you directed which way the car would turn,* would you not, by telling him where to turn?

"A Yes, sir.

"Q All right. *And where to stop* at his house, and so forth?

"A Yes, sir".

(Emphasis supplied)

This evidence clearly shows that the appellant-plaintiff did have a voice as to the route which the driver followed, however, there is absolutely no evidence from which the jury would have found that the appellant-plaintiff had any control over the speed at which the automobile was traveling, the yielding or failure to yield the right of way at intersections, or any other of the elements which contribute to the manner in which the automobile proceeded along the route he selected. It should be noted that the word "direction" referred to in the above quote from *Johnson* does not signify the line or course upon which anything is moving, but rather guidance or management. The control exercised by the passenger must be over some element contributing to the operation of the automobile which bears a direct relationship to the cause of the accident. It would certainly be improper to maintain that a passenger who had assumed the control of the regulation of the car's air conditioner was chargeable with the driver's negligence in an accident caused by the latter's excessive speed. It is no less improper to charge a passenger with the negligent manner in which the driver operates an automobile over a route selected by such passenger when the passenger has assumed only the direction of the route. A navigator of an airplane is not responsible for a pilot making a faulty landing.

The appellant-plaintiff Shannon in the instant case had assumed control over

only the route followed by the driver, and this court has been unable to find any evidence in the record from which the jury could have found any causal connection between the route followed and the cause of the accident and injuries. For this reason the control exercised by appellant-plaintiff was not of such a nature as to authorize the imputation of the driver's negligence to the passenger-appellant-plaintiff Shannon under the factual setting of this case.

Appellant-plaintiff next contends that the lower court erred in that portion of its oral charge in which it submitted to the jury the question of contributory negligence on the part of the passenger, appellant-plaintiff. The law in Alabama relative to the contributory negligence of a passenger-plaintiff was stated in King v. Brindley, 255 Ala. 425, 51 So.2d 870 (1951) as follows:

"One riding in an automobile driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury; that is, such care as an ordinarily prudent person would exercise under like circumstances. Moore v. Cruit, 238 Ala. 414, 191 So. 252; Proctor v. Coffey, 227 Ala. 318, 149 So. 838; Bradford v. Carson, 223 Ala. 594, 137 So. 426; McDermott v. Sibert, 218 Ala. 670, 119 So. 681; Birmingham Ry. Light & Power Co. v. Barranco, 203 Ala. 639, 84 So. 839; Utility Trailer Works v. Phillips, 249 Ala. 61, 29 So.2d 289; McGeever v. O'Byrne, 203 Ala. 266, 82 So. 508, 510; Birmingham Southern Ry. Co. v. Harrison, 203 Ala. 284, 82 So. 534.

\*    \*    \*    \*    \*    \*

"The duty is therefore not original with respect to the operation of the vehicle, but resultant, and that only from known and appreciated circumstances capable of bringing it into effect \* \* \* no fixed rule applicable to all cases can be formulated by which to determine when the duty stated arises, or what particular circumstances raise the duty, or what particular warning, protest, or action will suffice to manifest a discharge of the duty once it has arisen."

\*    \*    \*    \*    \*    \*

"It was said in Proctor v. Coffey, supra: 'We do not think that the authorities support the claim that a mere opportunity to know the danger is sufficient in the absence of facts suggesting to the guest as a person of ordinary care a necessity to keep a watch. That is what was held in the case of Baker v. Baker, supra [220 Ala. 201, 124 So. 740]. So in the case of B.[irmingham] R.[y] L.[ight] & P.[ower] Co. v. Barranco, supra, the duty of the guest is said to arise when he shoud (sic) anticipate that the driver of the vehicle will enter the sphere of danger or omit to exercise due care, not when he has the opportunity to so anticipate without anything to direct his attention to such condition. This principle is also mentioned in McGeever v. O'Byrne, supra; Dwight Mfg. Co. v. Word, 200 Ala. 221(14), 75 So. 979.' [227 Ala. 318, 149 So. 840.]"

The appellant-plaintiff, while recognizing the above statement of law as valid, bases his argument on the premise that there was no evidence upon which the jury could have found that the appellant-plaintiff was contributorily negligent, and, hence, submitting the question to the jury, via the lower court's oral charge, was error. The uncontradicted testimony of the appellant-plaintiff, Thomas Lee Shannon, was that the nearest thing he could remember was approximately a block before the accident, at which point in time, as far as the record reveals, no circumstances had revealed themselves which would have or should have suggested to a reasonable person that the vehicle was entering or about to enter a sphere of danger. This being so, no duty ever arose, on the part of appellant-plaintiff, to give any warning, protest or action as to the impending danger. Thus, the lower court did err in submitting the question of the ap-

pellant's-plaintiff's contributory negligence to the jury.

 There can be no doubt that it is error to hypothetically instruct a jury on a state of facts when there is no evidence to establish them. Bailey v. Tennessee Coal, Iron and Railroad Company, 261 Ala. 526, 75 So.2d 117. However, the fact that a given charge is abstract is not available as reversible error unless it affirmatively appears from the record that the charge worked injury to the complaining party; such party's remedy being to request an explanatory charge. Bailey v. Tennessee Coal, Iron and Railroad Company, supra; Jones v. Williams, 108 Ala. 282, 19 So. 317. However, in this instance the court is of the opinion that explanatory charges could not have eradicated the injury which resulted to Shannon from these erroneous instructions. Therefore this cause is reversed and remanded.

Reversed and remanded.

MERRILL, HARWOOD, MADDOX and FAULKNER, JJ., concur.